## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **JUSTIN KELLER,** *et al.* | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil Case No.: SAG-25-02474** |
| **MONROE CAPITAL CORP.,** *et al.* | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Justin Keller, Hailey Kardux, Patricia Bandy, Alexei Mack, and Richard Riley ("Plaintiffs") bring this action, on behalf of themselves and all others similarly situated, against Monroe Capital Corporation, Monroe Capital BDC Advisors, LLC, and Monroe Capital Management Advisors, LLC (collectively, "Monroe"), asserting various state and federal claims relating to contractual agreements between Plaintiffs and MV Realty PBC, LLC ("MV Realty"). ECF 21. Monroe has filed two motions: a motion to compel arbitration, ECF 25, and a motion to dismiss the amended complaint, ECF 24. Plaintiffs opposed both motions, ECF 26, 27, and Monroe filed replies, ECF 29, 30. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, Monroe's motion to compel arbitration will be denied as to the North Carolina-based plaintiff, granted as to the Maryland-based plaintiffs, and deferred for limited discovery to obtain the HBA signed by the Virginia-based plaintiff (although such discovery will not take place until and unless an amended complaint is filed). Monroe's motion to dismiss will be granted, although Plaintiffs will be afforded thirty days' leave to file an amended complaint comporting with the requirements of the Local Rules.

## I.    BACKGROUND

A basic statement of facts is helpful to the consideration of the motion to compel arbitration. The following facts are derived from Plaintiffs' amended complaint, ECF 21.

Real estate brokerage companies, under MV Realty, offered a "Homeowner Benefit Agreement" ("HBA") targeting homeowners in financial distress. *Id.* ¶¶ 2–5. The HBA transaction offered the homeowners a small amount of "promotional" cash that never had to be repaid, in exchange for an extremely high-interest secured loan, creating a lien-like interest in the homeowners' property and a 40-year "right to list" the property for sale. *Id.* ¶¶ 6–7, 15–16. The homeowners were targeted through robocalling and deceptive internet advertising geared towards persons who researched small short-term loans or refinancing opportunities. *Id.* ¶ 14. The homeowners were then presented with lengthy and complex contracts within a binder of materials, often while they were already meeting with a notary. *Id.* ¶ 19

When subsequently called upon to list a property for sale, MV Realty engaged in no effort to promote or market the property and served only as a "transactional broker" for an inflated fee. *Id.* ¶ 24. In many of the states in which HBAs were signed, MV Realty did not even employ licensed realtors. *Id.* ¶ 26. To get out of the 40-year agreement and retain an effective sales agent to market their homes, the homeowners had to pay steep termination penalties. *Id.* ¶ 11. More than 38,000 homeowners in dozens of states signed these HBAs. *Id.* ¶ 33.

Defendant Monroe served as the principal financier of MV Realty's scheme, profiting from the collection of the lucrative termination fees or the inflated brokerage commissions if the property sold. *Id.* ¶¶ 8, 30–32. Plaintiffs describe the relationship between Monroe and MV Realty as "a joint association-in-fact enterprise that combined deceptive practices, unlawful debt collection, and exclusionary control of the brokerage market to monetize homeowners' equity

through forty-year encumbrances." *Id.* ¶ 36. Several state Attorneys General have sued MV Realty and its subsidiaries, although Monroe itself has not been sued. *Id.* ¶ 34. Recently, in North Carolina, the Superior Court entered a Consent Judgment between MV Realty and the State in which MV Realty agreed that "the HBAs and Memoranda of HBAs are wholly unenforceable against North Carolina Consumers" and that it possessed "no rights, interests or privileges arising out of any HBA entered between Entity Defendants and North Carolina Consumers." ECF 32-1.

The Plaintiffs in this case are Maryland consumers (Keller/Kardux and Riley), Virginia consumers (Mack), and North Carolina consumers (Bandy) who executed HBAs and allege they were defrauded about the terms and suffered resulting harm. ECF 21 ¶¶ 58–107. Plaintiffs filed the instant class action suit and Amended Complaint against Monroe. ECF 1, 21. Monroe seeks to compel arbitration pursuant to the arbitration clause contained in the HBAs and also seeks to dismiss the Amended Complaint for failure to state a claim. ECF 24, 25.

## II.    MOTION TO COMPEL ARBITRATION

Initially, as confirmed at the hearing, the parties agree that this motion to compel arbitration falls in the "netherworld" between a motion to dismiss and motion for summary judgment. The relevant facts are largely undisputed, and the issues presented revolve around contractual interpretation. They do not require analysis of evidence outside the Complaint and the agreements integral thereto. Accordingly, as the parties concur, there is no meaningful distinction that needs to be resolved between motion to dismiss and motion for summary judgment standards to adjudicate this motion.

Otherwise, the parties agree on very little with respect to the legal standards governing the contested questions. They disagree about which state's law should govern, and they disagree about the "order of operations," or which questions this Court should address in which order. Plaintiffs

3

contend that this Court should first address whether the HBAs' plain language allows Monroe (a non-signatory) to enforce the express arbitration provisions before reaching whether there was concerted action between Monroe and MV Realty. That position is strained, because Monroe does not suggest that the plain language of the arbitration provision includes Monroe. It argues that, because of the concerted action alleged to have occurred, Plaintiffs are equitably estopped from avoiding arbitration, despite the fact that Monroe is not referenced in the HBAs themselves. This Court therefore agrees with Monroe's approach and will first evaluate whether "a valid agreement to arbitrate exists" before turning to the validity of the HBAs' delegation clause and whether equitable estoppel is warranted. *See Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997).

As the Fourth Circuit recently explained in *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 151 (4th Cir. 2025), the first question is "whether a valid arbitration agreement exists." *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)). As the party seeking to compel arbitration, Monroe "bears the burden of establishing the existence of a binding contract to arbitrate." *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 217 (4th Cir. 2024) (quoting *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 456 (4th Cir. 2017)). That initial issue is for the Court, because "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). And Section 4 of the Federal Arbitration Act "requires that the district court—rather than an arbitrator—decide whether the parties have formed an agreement to arbitrate." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019). But where there is a valid agreement to arbitrate, the "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also '"gateway" questions of "arbitrability,"

such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Henry Schein, Inc.,* 586 U.S. at 67–68 (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).

The initial question of whether there is an enforceable agreement to arbitrate presents a state law issue of contractual interpretation. *See Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 726 (4th Cir. 2025). For questions of formation, this Court cannot enforce the choice of law provisions in the HBAs[1] before it determines whether an agreement has been formed. *See Ford v. Genesis Fin. Sols., Inc.*, 726 F. Supp. 3d 441, 448-49 (D. Md. 2024); *Johnson v. Cont'l Fin. Co., LLC*, 690 F. Supp. 3d 520, 525 (D. Md. 2023). This Court thus turns to the choice-of-law rules of Maryland, the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Maryland uses *lex loci contractus* to determine contract formation, looking to the law of the jurisdiction where the contract was made. *Konover Prop. Tr., Inc. v. WHE Assocs.*, 142 Md. App. 476, 490 (2002). That jurisdiction is determined by "where the last act is performed which makes an agreement a binding contract." *Ford*, 726 F. Supp. 3d at 450 (quoting *Grain Dealers Mut. Ins. Co. v. Van Buskirk*, 241 Md. 58, 66 (1965)). Although not all of the copies of the HBAs for the Plaintiffs are fully executed, the parties do not appear to dispute that the "last act" would be the signature of MV Realty's representative before a notary in Florida. ECF 21-2, 21-3, 21-4. *Lex loci contractus* would therefore look to the Florida law governing contract formation.

In that area, however, Florida law does not differ in any meaningful respect from other states. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (explaining that

---

[1] The Maryland HBAs have a choice-of-law provision favoring Maryland law, although the arbitration provisions specify that "arbitration shall take place in Nevada." *See* ECF 21-2 at 7; 21-3 at 7. The North Carolina HBA's choice-of-law provision applies North Carolina law. ECF 21-4 at 9.

Florida law of contract formation requires "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms."). And Plaintiffs do not contend that any of those basic contract elements are lacking as to the HBAs or the arbitration clauses contained therein. Their challenge is to the validity and enforceability of the agreements, not their formation.

However, Monroe's position that valid arbitration agreements exist in the HBAs hits a snag as to North Carolina. In that jurisdiction, the State, MV Realty, and the North Carolina Superior Court have agreed that the HBAs are "wholly unenforceable against North Carolina Consumers" and that MV Realty possesses "no rights, interests, or privileges arising out of any HBA" entered with North Carolina consumers. ECF 32-1 at 8. Monroe has not explained how, in light of that concession and court order, this Court can find the present existence of an agreement to arbitrate as to Plaintiff Patricia Bandy, a North Carolina consumer. It would be patently inequitable to allow a non-signatory to enforce provisions of a "wholly unenforceable" agreement, on the ground that Bandy alleged "substantially interdependent and concerted misconduct" between Monroe and the party that has conceded unenforceability. Monroe's motion to compel arbitration, therefore, will be denied as to Plaintiff Bandy because Monroe has failed to establish "the existence of a binding contract to arbitrate." *Marshall*, 112 F.4th at 218. This Court will proceed no further to analyze the North Carolina HBA.

With valid agreements to arbitrate having been formed between MV Realty and the Virginia and Maryland Plaintiffs, the choice-of-law provisions in those HBAs take over and govern the next step: looking to the scope of the delegation clauses in the HBAs to determine whether the challenged issues of validity or enforceability are for this Court or an arbitrator. And here, this Court is unable to assess the choice-of-law provision or other terms of the Virginia HBA signed by Plaintiff Alexei Mack, because neither party is presently in possession of a complete

copy. *See* ECF 26 at 18 n.13 ("Plaintiff Alexei Mack does not possess, and likely never possessed, a full copy of his HBA."); ECF 25-1 at 14–15 (arguing in the alternative for targeted discovery seeking Mack's HBA agreement). This Court believes the most prudent approach is not to make assumptions based on other Virginia consumers' agreements, but to allow Monroe an opportunity to conduct limited, targeted discovery to obtain a copy of the agreement Mack and MV Realty signed before renewing its motion to compel arbitration.

Continuing with the Maryland HBAs, then, each of those agreements contains a broad delegation clause delegating questions about validity and arbitrability to the arbitrator. *See* ECF 21-2 and 21-3 at 5 ("[T]he arbitrator shall (i) resolve all disputes and issues between the Parties, including all issues of arbitrability and the validity and enforceability of this Arbitration Provision (however, the validity and enforceability of the class-action waiver agreed to by the Parties in this Arbitration Provision shall only be decided by a court) . . . ."). Thus, the myriad questions of unconscionability and invalidity raised by Plaintiffs are in the arbitrators' purview.[2] *See Corbin on Contracts* 2.12 (2026) ("[Unconscionability . . . goes to enforceability and not formation.").

What is in this Court's purview, however, is whether equitable estoppel should preclude Plaintiffs from avoiding the arbitration agreements (and delegation clauses) in the HBAs. Because, as discussed above, an agreement was formed, Maryland law governs the question under the choice-of-law provision.

---

[2] Plaintiffs do argue, in their opposition to the motion to compel arbitration, that the class action waiver renders the HBA arbitration clauses substantively unconscionable. ECF 26 at 17. That argument, pertaining to whether the arbitration clause itself is enforceable, is reserved to the arbitrator. This Court does not read Plaintiffs to be arguing, at this stage, the validity and enforceability of the class-action waiver itself. If such a challenge is mounted, it will be decided by this Court, not the arbitrator.

The Fourth Circuit engaged in extensive discussion of equitable estoppel in the arbitration context in *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627–28 (4th Cir. 2006):

"Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Int'l Paper*, 206 F.3d at 417–18 (internal quotation marks omitted). "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of [another's] signature on a written contract precludes enforcement of the contract's arbitration clause when [the party] has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Id.* at 418.

Applying these concepts, we have announced the following test for determining when equitable estoppel applies against a signatory to an arbitration clause:

[E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the ... agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 948 (11th Cir. 1999)) (alterations, ellipses, and internal quotation marks omitted). Because this legal test examines the nature of the signatory's underlying allegations against the nonsignatory, courts should examine the underlying complaint to determine whether estoppel should apply. *See id.* at 396 (denying application of estoppel where the signatory-plaintiffs' underlying "claims" did not rely on the contract containing the arbitration clause).

The "legal principle [underlying the theory of equitable estoppel] rests on a simple proposition: it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage." *Wachovia Bank, Nat. Ass'n v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006) (internal quotation marks and alterations omitted). To be equitably estopped from denying the applicability of an arbitration clause, therefore, the signatory need not necessarily assert a cause of action against the nonsignatory for breach of the contract containing the arbitration clause. Instead, estoppel is appropriate if "in substance [the signatory's underlying] complaint [is] based on the [nonsignatory's] alleged breach of the obligations and duties assigned to it in the agreement," *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993) (discussing *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836 (7th Cir. 1981)), "regardless of the legal label assigned to the claim," *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 319 (4th Cir. 1988). *See also R.J.*

8

*Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.*, 384 F.3d 157, 164 (4th
Cir. 2004) (stating that a party "may [not] use artful pleading to avoid arbitration").

There are two conditions, in the arbitration context, permitting a non-signatory to rely on
equitable estoppel to enforce an arbitration agreement: (1) "when the signatory to a written
agreement containing an arbitration clause must rely on the terms of the . . . agreement in asserting
its claims against the nonsignatory" and (2) when the signatory "raises allegations of substantially
interdependent and concerted misconduct by both the nonsignatory and one or more of the
signatories." *Id.* at 627 & n.3.

Here, both of those elements exist. Although the Maryland Plaintiffs do not in any way
seek to enforce the language of the HBAs, the claims they assert make frequent reference to and
presume the existence of the HBAs. And, there can be no doubt that the Maryland Plaintiffs raise
allegations of substantially interdependent and concerted misconduct by MV Realty and Monroe
– that is the entire basis of the Plaintiffs' claims against Monroe. Accordingly, while Plaintiffs will
be entitled to raise all of their arguments about the validity and enforceability of the HBAs within
the context of the arbitrations, Monroe's motion to compel arbitration will be enforced as to
Plaintiffs Keller, Kardux, and Riley.[3]

### III.   MOTION TO DISMISS

As this Court explained in its letter order of May 12, 2026, ECF 31, Defendants have also
moved to dismiss the Amended Complaint, ECF 24, in part because it grossly exceeds this Court's
40-page limitation. *See* Loc. R. 103.1(d) (D. Md. 2025). This Court will grant the motion to dismiss
on that basis, because the 29-page overage is caused at least in part by unnecessary inclusions,

---

[3] Whether this district will be the most appropriate venue to adjudicate the claims of plaintiffs from
other states is an issue for another day.

such as citations to judicial opinions and news pieces unrelated to providing a "short and plain statement of the claim." Plaintiffs will be afforded thirty days' leave to file a Second Amended Complaint rectifying the rules violation and complying with the page limitation. Defendants will then be permitted to respond, presumably by refiling some or all of the substantive arguments currently raised in their motion to dismiss.

IV.    **CONCLUSION**

For the reasons stated above, Defendants' motion to compel arbitration, ECF 25, will be granted as to Plaintiffs Keller, Kardux, and Riley, denied as to Plaintiff Bandy, and deferred as to Plaintiff Mack, in favor of limited discovery to obtain Mack's signed HBA, which cannot occur until an amended complaint is filed. Defendants' motion to dismiss, ECF 24, will be granted because of Plaintiffs' violation of the page limitation set forth in the Local Rules. A separate Order follows, affording Plaintiffs thirty days' leave to file a Second Amended Complaint.


Dated: June 15, 2026                                    _____/s/_____
                                                        Stephanie A. Gallagher
                                                        United States District Judge

10